### Dan Burkhalter *v.* State.

No. 6455.   Decided February 22, 1922.

Rehearing Granted February 21, 1923.

**1.—Robbery—Indictment.**

Where, upon trial of robbery, the form of indictment followed precedent, a motion to quash was correctly overruled.

**2.—Same—Bill of Exceptions—Words and Phrases—Harmless Error.**

Complaint by bill of exceptions of the use of the word "rob" in various questions, etc., would seem to be harmless. Following Clark v. State, 56 Texas Crim. Rep., 296, and other cases.

**3.—Same—Evidence—Conversation—Conspiracy.**

Upon trial of robbery, there was no error to permit in evidence the conversation between defendant and his companion, etc., upon the theory of a conspiracy which was borne out by the evidence. Following Smith v. State, 21 Texas Crim. App., 96, and other cases.

**4.—Same—Jury and Jury Law—Challenge for Cause.**

Where a juror said that he had an opinion but could lay it aside and give both the State and the appellant a fair and impartial trial, and the bill of exceptions showed no further reasons for objecting to said juror, there was no error in overruling the same.

**5.—Same—Bills of Exceptions.**

Where defendant's bill of exceptions consisted of eight typewritten pages, presenting approximately twenty objections to different matters occurring at intervals during the examination of certain witnesses, all of which were dissimilar, the same cannot be considered on appeal.

**6.—Same—Spanish Language—Bill of Exceptions.**

Where the objection in the bill of exceptions is without support, as the officer's testimony was not affected by the fact that he did not understand Spanish, and it must be presumed that the conversation had with the third party was in the presence of defendant, there was no reversible error.

**7.—Same—Acts and Declarations of Co-conspirators.**

No error appears in the bill of exceptions wherein objection was made to evidence showing familiarity between defendant and his co-conspirator about the time of this alleged robbery, nor in permitting a witness to testify that he had the co-conspirator to sign his name and initials upon a card, nor in introducing such card so attested in evidence, and to show that the co-conspirators were seen together about the time of and prior to the robbery.

**8.—Same—Hearsay Evidence—Self-Serving Declaration.**

The conversation between defendant's co-conspirator and the county attorney sought to be elicited by defendant as set forth in his bill of exceptions relates wholly to hearsay matters of a self-serving nature and was properly rejected.

**9.—Same—Evidence—Expert Witness.**

It was not a necessary predicate to enable a witness to testify, that by looking through a magnifying glass at the page of a hotel register as to certain erasures, for the witness to qualify as an expert.

**10.—Same—Bills of Exceptions—Practice on Appeal.**

Where it was impossible for this court to ascertain the ground for complaint presented or relied upon in the bill of exceptions, the same cannot be considered on appeal.

**11.—Same—Credibility of Witness—Cross-Examination.**

That the accused may be asked on cross-examination as affecting his credibility, if he is not then or has not at some former time been under indictment for felony is well settled.

**12.—Same—Striking Out Evidence—Acquittal.**

No error appears in refusing appellant's request to strike out certain evidence and instruct a verdict for acquittal.

**13.—Same—Recalling Witness—Practice in Trial Court.**

Where no sufficient reason is set forth in the bill of exceptions to per-

mit defendant to recall a certain witness after the evidence was closed, there is no reversible error.

**14.—Same—Preparing Special Charges—Practice in Trial Court.**

Three hours is not shown to be an unreasonably short time in which the accused is required to take his exceptions to the court's charge and prepare suitable special charges.

**15.—Same—Argument of Counsel—Discretion of Court.**

Limiting the argument to one hour and a half for argument to each side will not be held by this court to show abuse of the court's discretion in such limitation, under the bill of exceptions. Following Bailey v. State, 37 Texas Crim. Rep., 579, and other cases.

**16.—Same—Argument of Counsel.**

Where defendant's bill of exceptions complaining of various statements of the district attorney in his argument are untenable, there is no reversible error.

**17—Same—Newly Discovered Evidence—Motion for a New Trial.**

It was not reversible error to strike from the record the affidavit to the motion for a new trial of one who by reason of a felony conviction was incompetent to give testimony in any form, besides the alleged newly discovered evidence was relevant only as affecting the credibility of witnesses.

**18.—Same—Sufficiency of the Evidence—Conflicting Testimony.**

Where the evidence is direct and not circumstantial the court is not warranted in disregarding the same because the witness was impeached by conflicting statements nor because it was contradicted by defendant and his witnesses. Following Bailey v. State, 63 Texas Crim. Rep., 584.

**19.—Same—Charge of Court—Consent.**

Where the court embodied in his charge an instruction to the effect that as a predicate for conviction the State must prove that the money was taken from the party injured by assault, putting him in fear of death and against his will, and there was no claim of right to the money in either defendant or his co-conspirator, the same was sufficient on the issue of want of consent.

**20.—Same—Conspiracy—Charge of Court.**

The necessity for an instruction of principals or conspirators in the trial of defendant, upon whose acts in making the assault, the reliance of the State was placed, is not perceived, and there is no reversible error.

**21.—Same—Charge of Court—Limiting Testimony.**

In the absence of some designation of the matters of which the limitation was demanded, this court is not able to know the merits of this complaint, as the objections to the charge must be specific, etc.

**22.—Same—Hearsay Evidence.**

Where appellant alleged in his motion for a new trial that one L. had confessed to one R. that he and not the defendant committed the robbery, and that L. exhibited to R. the money taken from the injured party, and it was shown that L. was a convicted felon in the Federal penitentiary, and the court refused to consider the affidavit, there is no reversible error. Following Greenwood v. State, 84 Texas Crim. Rep., 548, and other cases.

**23.—Same—Rehearing—Acts and Declarations of Third Parties.**

Where the State's case rested largely upon the soundness of the proposition that the defendant's companion and defendant were co-conspirators and principal offenders in the crime charged, and the evidence showed that said companion gratuitously promised the injured party the repayment of said money at the time of the robbery, it was reversible error to admit in evidence the conversation between said companion and the wife of the injured

party several days after the robbery to the effect that said companion told her not to be worried, that he, the companion, would pay back said money to her husband, and that she informed her husband of same.

**24.—Same—Rehearing.**

This court first adopted the State's view of the evidence, for the admission of which, a reversal was finally ordered, and this court must adhere to that final opinion.

Appeal from the District Court of El Paso. Tried below before the Honorable W. D. Howe.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*M. W. Stanton, Chas. Owen* and *Hudspeth & Harper,* for appellant. —On question of conspiracy: Adams v. State, 10 Texas Crim. App., 677.

On question of consent: Graham v. State, 61 S. W. Rep., 714; Harris v. State, 31 Texas Crim. Rep., 411; Dobbs v. State, 51 id., 113.

On question of court's charge on conspiracy: Reynolds v. State, 8 Texas Crim. App., 412; Freeman v. State, 52 Texas Crim. Rep., 500; Walker v. State, 140 S. W. Rep., 453.

On question of conversation between third parties: Gonzales v. State, 16 Texas Crim. App., 152; Polly v. State, 33 Texas Crim. Rep., 410; Jacobs v. State, 42 id., 353; Harvey v. State, 35 id., 545.

On question of recalling witness: Williams v. State, 24 Texas Crim. App., 665; Jones v. State, 38 Texas Crim. Rep., 103.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of El Paso County of robbery, and his punishment fixed at confinement in the penitentiary for five years.

No more of the facts will be stated than are necessary to understand the opinion. Appellant was charged with robbery of one Rivera, in the usual form charging robbery by the use of a firearm. The injured party testified that after a short acquaintance with one Frank Miller and several conferences with him in which Miller told witnes that he had an automobile located down near the town of Ysleta, in the Rio Grande valley, below the city of El Paso, witness made a date with Miller to go down and look at said automobile with a view of purchasing same. The parties went on an interurban to Ysleta, and proceeded on foot toward what Miller said was the place where said car was located. As they approached the vicinity, Rivera stated to Miller that he saw a man hiding in some tall weeds near the road but was assured by Miller that this amounted to nothing as said party was one of the men who worked around there. As they

approached the spot where said man was concealed he arose out of
the weeds and presented a pistol to Rivera and took from him $500
in money. A parley ensued. Rivera positively identified appellant as
the man who held him up, and testified that Miller and appellant went
aside and talked for fifteen or twenty minutes, and that he and Miller
left the spot together. He also said that as they were leaving he told
Miller that he was going to report the occurrence at once to the court
and Miller advised him not to do it, and further told him that if he
did not do so that he, Miller, would repay the amount taken from
Rivera, within eight or ten days, and Rivera testified that he wrote out
a card in Spanish at the time upon which it was stated that Miller
owed him said amount of money, and that Miller signed this card.
The card containing a statement of the acknowledgment of the in-
debtedness of $500 to Rivera was offered in evidence by the State and
identified as the one about which said witness testified. A few weeks
after the alleged robbery it is in testimony that Rivera saw appellant
at a certain drinking resort and at once identified him as the party
who had robbed him. There is some testimony that Rivera and friends
of his took hold of appellant at the time and demanded of bystand-
ers that he be arrested. It was shown in testimony that Miller has
been convicted of a felony and he did not testify. The appellant's de-
fense consisted of an alibi, he testifying and producing witnesses who
corroborate him, that he was in the city of El Paso and at his office
at the time identified by Rivera as being that of the alleged robbery.

By bill of exceptions No. 1 appellant complains of the refusal of
the trial court to quash the indictment. The prosecution was under
Article 1327, Vernon's P. C. The form of indictment herein has been
sanctioned by this court in many cases. Green v. State, 66 Texas Cr·m.
Rep., 446, 147 S. W. Rep., 593; Robinson v. State, 67 Texas Crim.
Rep., 79, 149 S. W. Rep., 186; Bell v. State, 77 Texas Crim. Rep.. 146,
177 S. W. Rep., 966; Gonzales v. State, 88 Texas Crim. Rep., 248,
226 S. W. Rep., 405. We can add nothing to what is said by this court
in these authorities supporting said indictment.

That prosecuting witness was robbed on the occasion in question
by some one, seems not to be seriously questioned. In appellant's
motion for new trial he asserts that such is the fact and supports same
by appending the affidavit of one Lawson, who therein affirms that he
robbed appellant on the occasion in question. Complaint by bill of
exceptions of the use of the word "robbed" in various questions.
and that the occurrence was referred to as "the time when you were
robbed" or "when I was robbed," would seem to be harmless. Ful-
cher v. State. 28 Texas Crim. App., 471; Clark v. State, 56 Texas
Crim. Rep., 296.

The State claimed a conspiracy between appellant and Frank Miller,
and an acting together between them in the alleged robbery. Upon
this theory and also in accordance with the doctrine of *res gestae,*

the court permitted in evidence the conversation between Miller and Rivera and the writing and signing of the card mentioned above, by Miller and Rivera while the parties were still in proximity to the scene of the robbery. Rivera testified that he went to said place at the request of Miller to see the car mentioned above. It appears that Miller told him that he had a ranch near Ysleta and could sell him an automobile which he had there. These declarations of Miller to Rivera would seem to be admissible upon the theory of a conspiracy which we think borne out by the evidence. Smith v. State, 21 Texas Crim. App., 96; Nixon v. State, 36 Texas Crim. Rep., 66; Sapp v. State, 87 Texas Crim. Rep., 606; Middleton v. State, 86 Texas Crim. Rep., 307, 217 S. W. Rep., 1046.

Appellant has a lengthy bill of exceptions complaining of the refusal of the trial court to accord to him a peremptory challenge in addition to those allowed by statute. If we understand said bill it fails to set out any sufficient ground for the contention. When juror Barada was tendered, after examination the State accepted him, and it is stated in the bill that the juror said he had an opinion but could lay it aside and give both the State and appellant a fair and impartial trial, and that appellant desired to challenge said juror and asked the court to grant him the privilege of doing so, which the court declined. The bill nowhere attempts to show any further reasons for objecting to said juror. It is not shown that his opinion was hostile to appellant, nor that his presence upon the jury in any way militated against the interests of appellant, and we find nothing in the bill presenting any serious error.

Appellant's bill of exceptions No. 5 consists of eight typewritten pages, presenting approximately twenty objections of appellant to different matters occurring at intervals during the examination of a certain witness, said grounds of objection apparently being dissimilar and the whole concluding with a reference to the entire direct and re-direct examination of said witness as set forth in the statement of facts. This court cannot consider such a bill of exceptions.

In bill of exceptions No. 6 objection is set forth to allowing witness Beck to testify to certain conversations in the presence of appellant, the ground of objection being because Beck did not understand Spanish. An examination of the facts stated in the bill make it appear that Beck did not undertake to tell what was said in Spanish, but narrated what was stated to him by another party present, presumably in the presence of appellant, who told him what was being said in Spanish by prosecuting witness Rivera. The occasion referred to was that upon which River saw appellant for the first time after the alleged robbery and then accused him of being the man who had robbed him. When officer Beck was called in, he said the conversation on the part of Rivera was in Spanish but that another man present told him that Rivera said he had been robbed by appellant and wanted the defendant

arrested. As far as we can judge the contents of the bill, the objection is without support, as the officer's testimony was not affected by the fact that he did not understand Spanish, and we must presume that the conversation had with the third party was in the presence of appellant.

No error appears in bill of exceptions No. 7 wherein objection was made to evidence showing familiarity between appellant and Frank Miller about the time of this alleged robbery, nor in permitting a witness to testify that he had Miller to sign his name and initials upon a card, nor in introducing such card so attested, in evidence. It was the State's theory that the appellant was at the place of said robbery, knowing by information received from Miller that the latter and Rivera would be down at said place on the day of the occurrence; and as corroborative of this theory the presence of Miller in and around appellant's office and the movements of Miller about said time, were admissible. The witness Rivera was cross-examined relative to his failure to report promptly the occurrence of the robbery, and was permitted to explain that his reason for not doing so was because of the promise of Miller that he would repay to him the lost money within eight or ten days. Rivera claimed that the money lost by him belonged to his employer and had been collected by him in the course of his employment. For the same reasons no error appears in bill of exceptions No. 8, it being material to show that Miller and appellant were seen together about the time of and prior to said robbery. General reference in this bill and others to the statement of facts, is of no avail. The bill should be complete within itself.

The conversation between Mrs. Rivera and Frank Miller is of doubtful admissibility. It might be proper as sustaining the claim of Rivera that his reason for not promptly reporting the robbery was because of Miller's promise to repay him the money taken at said time. We are not inclined to extend the doctrine of conspiracy as far as the State contends it should go. If it be laid down as correct to introduce statements made by anyone of them, at any time after a theft or other crime had been committed by several, upon the hypothesis that the conspiracy was not yet ended until the safety of each was assured, there could be no end to any conspiracy until all the participants had died or been convicted. However, the conversation referred to contained nothing referring in any way to appellant and was but a statement of Mrs. Rivera to Miller of what would happen to her husband if Miller did not repay said money, together with the reply of Miller, in substance, that witness need not be alarmed, that he was going to pay him soon. Unless there be something in said conversation which could in some way injure appellant's rights or prejudice his cause, we would hold the error, if any, of its admission harmless. As substantially stated above, nothing in the record seems to contradict the fact that Miller was with Rivera on the occasion of the

robbery, nor that he promised Rivera that if he would not report the occurrence he would repay the money taken. This being true, we do not think the testimony of Mrs. Rivera could have injured appellant's cause.

The conversation between Miller and the County Attorney of El Paso County, sought to be elicited by appellant as set forth in bill of exceptions No. 10, relates wholly to hearsay matters of a self-serving nature and was properly rejected.

We do not think it a necessary predicate for him to qualify as an expert to enable a witness to testify that by looking through a magnifying glass at the page of a hotel register upon which a certain name was written he could see that something had been erased from said line before the name then appearing thereon was written.

Appellant's bill of exceptions No. 12 consists of eight pages, stating numerous objections to different matters, including several motions to exclude. Such a bill of exceptions is not in conformity with the rules, and concluding as same does, with the statement that appellant tenders his bill of exceptions with the request that same be examined, approved, ordered filed, etc., makes it impossible for this court to ascertain the grounds of complaint presented or relied upon, and same will not be considered by us.

That the accused may be asked on cross-examination as affecting his credibility, if he is not then or has not at some former time been under indictment for felony, seems to be the settled law in this State. Branch's Crim. Law, Sec. 868, for collation of authorities. Complaint of this matter appears in bill of exceptions No. 13.

No error appears in refusing appellant's request to strike out certain evidence and instruct a verdict for appellant's acquittal, as set forth in bill of exceptions No. 14.

The court refused appellant's request to permit him to recall a witness after the evidence was closed. It appears from the record that a subpoena had been issued for a Mr. Wein, husband of one of appellant's witnesses. Mr. Wein did not appear until the evidence had been concluded. When he came he brought with him his army discharge of date April 16, 1920. Said discharge was examined by counsel for the State and appellant. The court told them that he would reopen the case to permit the introduction of said discharge on behalf of either party. The State asked the privilege of introducing said discharge, which was granted. Appellant then asked that he be permitted to recall Mrs. Wein "and examine her with reference to the date of said discharge to prove by said witness that the same became effective on April 17, 1920, when her husband returned to his home as a civilian but the court thereupon refused," etc. No sufficient reason is set forth in said bill calling for said proposed evidence, and our presumption is that the action of the trial court was correct. We do not understand how Mrs. Wein could testify to the time when such

discharge became effective. This matter appears in bill of exceptions No. 15.

If we understand appellant's bill of exceptions No. 16, it urges error in not allowing more time to prepare special charges. We gather from said bill that the evidence closed at 10:45 a. m., and that at 11:35, fifty minutes later, the court submitted to both counsel his charge. At 2:20 p. m., after setting forth the proceedings in the interim, the bill sets forth that the court declined to grant further time for the preparation of special charges. We are not prepared to say that the trial court abused his discretion. Three hours is not shown to be an unreasonably short time in which the accused is required to take his exceptions to the court's charge and prepare suitable special charges. Many decisions of this court uphold the idea that much discretion must be confided in the trial court in matters of this kind.

Bills of exceptions presenting objections to limiting the argument to one hour and a half to each side, which presents no facts showing injury further than as contained in statements made by appellant's attorney to the trial court at the time, as his reasons for desiring additional time, will not be held by us to show abuse of the court's discretion in such limitation. Bailey v. State, 37 Texas Crim. Rep., 579; Creech v. State, 70 Texas Crim. Rep., 229; Holmes v. State, 68 Texas Crim. Rep., 17, 150 S. W. Rep., 926.

Appellant has a bill of exceptions complaining of various statements of the district attorney in his argument, which we have examined but are of opinion that same presents no error.

As ground for his motion for a new trial appellant set up newly discovered evidence. Evidencing same and attached to said motion was the affidavit of one Lawson. Upon motion of the State, Lawson's affidavit was stricken from the record, it being shown that he was under conviction in the State courts for robbery, and in Federal courts for another felony, and that at the time of hearing such motion he was then incarcerated in the Federal penitentiary. One of the necessary elements of evidence, newly discovered or otherwise, is that it must be competent. Crossly v. State, 67 Texas Crim. Rep. 464, 148 S. W. Rep., 1087; Pitts v. State, 29 Texas Crim. App., 374. It was not error to strike from the record the affidavit of one who by reason of a felony conviction, was incompetent to give testimony in any form. We think one so disqualified to testify could make no affidavit to such facts which should be considered. The other newly discovered evidence appeared from the affidavits of one Karwowski and Mr. Franks. The former swore that a short time before the alleged robbery he carried Frank Miller and a Mexican down to a point below Ysleta, in his service car, and that they there had a conversation with a soldier in which ammunition was mentioned, and that he told them they could not haul ammunition in his car; that they drove back to El Paso and he gathered from their conversation that they were going

to return to Ysleta. The supposed effect of this affidavit was as bearing upon the proposition that Miller and a Mexican, supposedly Rivera, were engaged in an illegal enterprise on the occasion of the robbery. If we indulge in presumption we would suppose that this was intended in some way to reflect upon the testimony of Rivera, and we are inclined to think the inference far-fetched. Karwowski did not identify the Mexican as Rivera, nor do we quite see how such evidence bore upon the question of this appellant's guilt or innocence. Another affidavit attached to said motion was that of a Mr. Franks which set up a matter, which if true and provable, would seem to reflect upon State witness A. Piquero, and would tend to show that he was engaged in some illegal enterprise affecting the acquisition and sale of ammunition. It is so well settled that evidence newly discovered which is relevant only as affecting the credibility of witnesses, is not held sufficient to call for a new trial, that we are not inclined to regard appellant's contention upon this point as of any avail to him. Vernon's C. C. P., p. 785, for collation of authorities.

Finding no error in the record for which the judgment should be reversed, an affirmance will be ordered.

*Affirmed.*

ON REHEARING. ·

February 2, 1923.

MORROW, PRESIDING JUDGE.—The subject of the robbery was Felipe Rivera. According to his testimony, appellant perpetrated the robbery, presenting a pistol and demanding the money of Rivera. He paid close attention to the appellant at the time, though he had never seen him before and did not know his name. About three weeks after the robbery, Rivera went into the Model Bar, and observing the appellant, Burkhalter therein, accosted him, and called him a thief in Spanish. Burkhalter made no reply but put his hat over his face. Rivera said to his boss, in the presence of the appellant, that the appellant was the robber. The boss undertook to call the police. Burkhalter endeavored to get outside, and he was retained by Rivera and his boss.

On the trial, Rivera identified the appellant as the man who committed the offense. There was cross-examination of the witness Rivera and the introduction of excerpts from his testimony upon the examining trial for the purpose of impeachment.

Appellant testified to an alibi and produced testimony of others supporting this theory.

Stress is put on contradictions in the testimony of Rivera, and its inconsistency with other testimony in the record. It cannot be questioned that Rivera testified that the sum of five hundred dollars was taken from his pocket by the appellant, he controlling Rivera by the use of a pistol; that Rivera subsequently identified the appellant

as the assailant, caused his arrest and pointed him out at the trial. The statute, Article 786 of the Code of Crim. Proc., declares that in all cases the jury are the exclusive judges of the facts proved, and the weight to be given to the testimony. It is true that when the verdict is manifestly wrong and it is clear that an injustice has been done, the conviction should be set aside though there be evidence supporting the verdict. Walker v. State, 14 Texas Crim. App., 609; March v. State, 3 Texas Crim. App., 335; Lockhart v. State, 3 Texas Crim. App., 567; Vernon's Tex. Crim. Stat., Vol. 2, p. 609. This rule, however, is not to be construed to authorize the court to ignore the statute mentioned and determine the weight to be given conflicting testimony, but will be found applicable to cases of circumstantial evidence in which the court is convinced that the inference of guilt is not established by the proven facts. Walker v. State, 14 Texas Crim. App., 609; Lane v. State, 19 Texas Crim. App., 70; Welch v. State, 57 Texas Crim. Rep., 111; Murphy v. State, 65 Texas Crim. Rep., 55, 143 S. W. Rep., 616; Hollins v. State, 71 Texas Crim. Rep., 84; Vernon's Tex. Crim. Stat., Vol. 2, p. 690, note 17, p. 691, note 18. In the instant case, the evidence is direct, not circumstantial. The injured party testified that he was assaulted and robbed by the appellant. The court is not warranted in disregarding it because the witness was impeached by conflicting statements, nor because it was contradicted by the appellant and his witnesses. Bailey v. State, 63 Texas Crim. Rep., 584; Robertson v. State, 68 Texas Crim. Rep., 243, 150 S. W. Rep., 893; Riley v. State, 4 Texas Crim. App., 538; Vernon's Texas Crim. Stat., Vol. 2, p. 688, note 5.

Rivera testified that, at Miller's solicitation, he went to the place where the robbery occurred upon the representation of Miller that he was going to see an automobile which was for sale. When they reached a point a few yards distant from that at which the robbery took place, Rivera saw a man among the weeds. Miller's attention was called to the man, and Rivera was informed that he was but a care-taker. Soon after Rivera and Miller came near to the place where the man was hidden, the appellant, presenting a pistol, demanded that they raise up their hands. This Rivera did, according to his testimony, and at Burkhalter's command, turned his back while the appellant, holding the pistol against him, searched him and took from him five hundred dollars in money. During the transaction, Miller and Burkhalter were talking together in English which Rivera did not understand. Burkhalter at first failed to find the money, but upon research discovered it. A short time after Rivera and Miller had separated from the appellant after the robbery, when they were a distance of about twenty-five or thirty yards, Miller requested Rivera not to report the matter; that he (Miller) would pay him the money, and in that connection gave to Rivera an obligation to do so in eight or ten days.

On cross-examination, Rivera said that during the robbery Miller and Burkhalter were conversing, though he did not understand what they said, but that Miller was trying to convince him to give up the money, saying that he (Miller) would pay it back; that Miller persuaded him to let the robber have the money; that he did not give it up because Miller told him to, or because he thought that the money would be given back to him, but that the man took the money from him; that the man held him up and took it; that Miller did none of the searching but that the other man did so. On this testimony, appellant insists that the court should have submitted the issue of fact whether the money was surrendered by reason of the assault or by reason of the persuasion.

Referring to the rule requiring that affirmative defenses be submitted to the jury, the appellant complains that his exception to the charge criticising it for its failure to instruct the jury that if Rivera consented to the taking of his money, the offense was not robbery as charged in the indictment. Of course, if Rivera consented to the robbery, the offense was not committed. Tones v. State, 48 Texas Crim. Rep., 363; Cyc. of Law & Proc., Vol. 34, p. 1801. The court embodied in his charge an instruction to the effect that as a predicate for conviction the State must prove that the money was taken from Rivera by assault, putting him in fear of death and against his will. There was no claim of right to the money in either appellant or Miller. Consent, so far as it was an issue, was, in our opinion, sufficiently embraced in the main charge.

The quoted testimony of Rivera does not, in our opinion, suggest an issue of his willingness to part with his money, or that he lost possession from any cause except that of constraint under which he was placed by the appellant and his confederate Miller.

There is complaint of the failure to embrace in his charge the law of conspiracy, and to define the circumstances under which the acts and declarations of conspirators are admissible against each other. There is no explicit suggestion in the exception touching how or why the subject should have been charged upon. The connection of Miller with the offense, as detailed by the prosecuting witness Rivera, characterized him as a principal offender. He was present and aided and encouraged the robbery, to say nothing of his devices to bring Rivera within the power of the robber. Miller was not on trial and the State did not rely on his acts. The necessity for an instruction on the law of principals or conspirators in the trial of appellant upon whose acts in making the assault the reliance of the State was placed, is not perceived.

We find a general exception to the court's charge on the ground that it failed to limit the testimony touching the declarations of Miller and that impeaching the witnesses Williams and Wein. In the absence of some designation of the matters of which the limitation was

demanded, we are not able to know the merits of this complaint. The statute, Article 735, Code of Crim. Proc., requires that objections to the charge be specific. To comply with this demand, there should be designated in the exception itself, a special charge or bill of exceptions embracing the testimony which appellant desired should be limited. Article 743, Code of Crim. Proc.

In the direct examination of Rivera, he declared that at the time of the robbery and while it was in progress, Miller told him to submit to the taking of the money; that otherwise he would be killed by appellant; that he would be repaid by Miller. This occurred in the presence of appellant. As Miller and Rivera were leaving and while appellant was a few steps distant, Rivera expressed to Miller his intent to report the robbery to the police. Miller requested him not to do so, and said that in about eight days he would repay the money. Miller at that time signed a written agreement to repay the money. This agreement was before the jury. Appellant's arrest did not occur for some twenty days later.

The credibility of Rivera's testimony was attacked by cross-examination on the theory that the delay in reporting the robbery discredited the witness. It appeared that the money lost was money that belonged to the employees of Rivera. The court received over appellant's objection testimony of Mrs. Rivera that on two occasions within four or five days after the robbery, Miller was at her home and that on one of those occasions she asked Miller about repaying the money according to his agreement, and told him that unless he did so, Rivera would lose his job; that Miller said he would pay it. This was hearsay. However, it added nothing to the undisputed fact that Miller had, in writing, promised to pay the money to Rivera. The trial court received it on the idea that it rebutted the appellant's theory that the delay of Rivera in making the complaint discredited him. It did bear on this phase of the case, but still Miller's promise to repay the money to Mrs. Rivera would be hearsay, since, however, it was but repetition of the promise proved without dispute, we think its effect was not of importance such as justifies a reversal. (See Kounts v. State, recently decided.

In his motion for new trial, appellant alleged that one Lawson had confessed to one Race that he and not the appellant committed the robbery and that Lawson exhibited to Race the money taken from Rivera. The affidavit of Lawson was produced but the court refused to consider it because Lawson was a convicted felon, confined in the Federal penitentiary. Race's affidavit was not obtained. Race, if present, could have merely related that Lawson had admitted that he was the offender. Our courts have often decided that such an admission is hearsay and inadmissible when the State's case rests on direct testimony and the admission was not *res gestae*. Bowen v. State, 3 Texas Crim. App., 617; Holt v. State, 9 Texas Crim. App.,

571; Horton v. State, 24 S. W. Rep., 28; Hodge v. State, 64 S. W. Rep., 242; Blocker v. State, 55 Texas Crim. Rep., 40; Walsh v. State, 85 Texas Crim. Rep., 216; Greenwood v. State, 84 Texas Crim. Rep., 548; Amer. State Rep., Vol. 131, p. 778, note.

Other questions presented in the motion, have, in our judgment, been properly decided and sufficiently discussed in the original opinion.

The motion is overruled.

*Overruled.*

### ON REHEARING.

### January 17, 1923.

LATTIMORE, JUDGE.—In our original opinion herein we stated our doubt as to the admissibility of the testimony of Mrs. Rivera as to the conversation had between her and Frank Miller a number of days after the alleged robbery. The harmless character of said testimony was affirmed in our opinion upon the first motion for rehearing. At the urgent insistence of appellant we allowed a second motion to be filed and have considered anew the many questions presented, and have concluded that we were in error in holding the above testimony admissible or harmless. The State's case rested largely upon the soundness of the proposition that said Miller and appellant were co-conspirators and principal offenders in the crime charged. One of the features of the transaction by which Miller's acting together with appellant was proven, was his otherwise gratuitous promise to Rivera, the injured party, at the time of and in connection with the alleged taking of the money by appellant, that he, Miller, would guarantee the repayment to Rivera of the money lost, within eight or ten days thereafter. Such promise to pay thus became a material matter. Mrs. Rivera swore that a number of days after the said robbery Miller came to her house to see her husband, and that she then had a conversation with him; that she knew about the robbery; and that she went on crying and told Miller if he was not going to pay that money, her husband was going to lose his job. The State's attorney then asked her what Miller said to this. Her reply was, "He told me not to be worried about it, that he would take that money over to my house; that he was going to pay it." She further said she told her husband of this conversation. Upon more mature reflection we have become convinced that the statement above mentioned could easily be construed by the jury as an admission by Miller of his complicity in the robbery committed by appellant; that he was thus admitting to Mrs. Rivera that he was going to repay money which appellant had taken from her husband in said robbery. This being our view of said statement, it would be deemed by us material and we think it inadmissible under the well known rule rejecting testimony of statements made by coconspirators out of the presence of the accused after the conspiracy has ended.

So believing and considering ourselves in error in holding said testimony to be admissible, appellant's motion for rehearing is granted, the affirmance set aside, and the judgment will be reversed and remanded.

*Reversed and remanded.*

ON REHEARING

February 21, 1923.

HAWKINS, Judge.—All the matters urged in the motion for rehearing filed by the State were considered in passing upon the case both originally and on appellant's motion for rehearing. We first adopted the State's view of the evidence for the admission of which reversal was finally ordered, but after most careful deliberation reached the conclusion that we were in error. We adhere to that opinion.

The State's motion for rehearing is overruled.

*Overruled.*